acm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RALPH ALLISON DUDLEY, JR.,** | ) | |
| **AND DUSTIN RALPH DUDLEY** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-2030-JAR** |
| | ) | |
| **JAMES V. GAGNE IV,** | ) | |
| **ANDREW N. DOWELL AND** | ) | |
| **JAMES V. GAGNE III** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This diversity suit arises from a motor vehicle accident that occurred on October 30, 2004 in Jefferson County, Kansas.  Decedent, Ralph Allison Dudley, was killed when a vehicle driven by James V. Gagne, IV crashed into Dudley's motor vehicle.  Plaintiffs, two of decedent's five adult children, brought this wrongful death action against defendants, the driver, the owner and a passenger in the car.  The parties have now settled this action, and the defendants' insurance carrier, State Farm Mutual Insurance Company, has paid $100,000, the policy limits on the vehicle, into the Court's registry.

After plaintiffs filed this action but before the settlement was reached, Barbara Dudley, the common law wife and widow of decedent filed a motion to intervene, which was granted.  In the administration proceedings for decedent's estate in Kansas state court, plaintiffs objected to Barbara's designation as administratrix of the estate and petitioned the Atchison County District Court to have Barbara removed.  Plaintiffs denied that Barbara was the common law wife of

1

decedent because she had procured a decree of dissolution of marriage from decedent from the Atchison County District Court in 1997.  However, the Atchison County District Judge issued an order denying plaintiffs' request and finding that Barbara and decedent were common law husband and wife at the time of decedent's death.

There are six claimants to the wrongful death proceeds, Barbara Dudley, and the decedent's five adult children: (1) Ralph Allison Dudley, Jr., (2) Dustin Ralph Dudley, (3) Angela McNair, (4) Randall Dudley and (5) Dorothy Dudley.  The Court held an apportionment hearing on January 31, 2006, and took the matter of the proper apportionment under advisement. After reviewing the evidence presented at the hearing and the parties' submissions, the Court is now prepared to rule on the proper apportionment of the wrongful death settlement proceeds among the six claimants.

**Legal Standard**

As a federal court sitting in diversity over this action, the Court "must apply the substantive law of the state in which it sits, in this instance, the state of Kansas."[1]  Plaintiffs brought this suit under the Kansas Wrongful Death Act.[2]  Under this Act, damages may be recovered for: (1) mental anguish, suffering or bereavement; (2) loss of society, companionship, comfort or protection; (3) loss of marital care, attention, advice or counsel; (4)   loss of filial care or attention; (5) loss of parental care, training, guidance or education; and (6) reasonable funeral expenses for the deceased.[3]  "K.S.A. § 60-1905 provides for apportionment among the heirs of

---

[1] *Turman, et al. v. Ameritruck Refrigerated Trans. Inc.*, 125 F. Supp. 2d 444, 446 (D. Kan. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[2] K.S.A. §§ 60-1901–1905.

[3] K.S.A. § 60-1904.

any amount recovered to be made by the trial court according to the loss sustained by each."[4]

That statute reads:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.[5]

In light of the Atchison County District Court's ruling that Barbara was decedent's common law wife, the parties agree that Barbara and his five adult children are his "heirs," all of whom are entitled to apportionment under the statute. However, the parties take different positions with respect to how the proceeds should be divided among the six heirs. Plaintiffs request an equal division of the settlement proceeds among the six claimants. Barbara testified at the hearing that she wants one-half of the proceeds believing that she is entitled to this amount under Kansas probate law. She also testified that she believes the kids are entitled to some of the proceeds but she does not believe that all six people deserve an equal share of the proceeds when the remaining claimants did not suffer the same loss that Barbara did upon decedent's death. The Court will address the distribution of the settlement proceeds in the order in which they are presented in K.S.A. § 60-1905.

### Attorneys Fees

---

[4]*Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972).

[5]K.S.A. § 60-1905.

K.S.A. § 60-1905 provides for the apportionment of the "net amount recovered" in a wrongful death action, after the allowance of costs and reasonable attorneys fees for the plaintiffs.  "The statute clearly contemplates that fees for plaintiffs' counsel will be awarded out of the recovery obtained."[6]  "K.S.A. §  60-1905 requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case."[7]  "The general rule is that an attorney is entitled to the reasonable value of services performed for the client."[8] "Determination of a reasonable fee requires consideration of the factors set forth in Rule 1.5(a)."[9]

In this case, plaintiffs Ralph and Dustin Dudley entered into a one-third contingency fee agreement with their attorney, Frank D. Taff (Doc. 44, Attach. 1).  Mr. Taff has also submitted a "Statement of Time Expended by Counsel For Plaintiffs and Their Expenses in Connection with this Litigation" (Doc. 44) in which he states that he has spent 8,850 minutes working on this case prior to the hearing.  Not included in this statement is the time Mr. Taff spent preparing

---

[6]*Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. App. 1999).

[7]*Id.*

[8]*Id.* (citing 7 Am. Jur. 2d *Attorneys at Law* § 306).

[9]*Id.*  Kansas Rule of Professional Conduct 1.5(a) requires that an attorney's fee be "reasonable."  The factors to be considered in determining whether a fee is reasonable include:
>(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>(3) the fee customarily charged in the locality for similar legal services;
>(4) the amount involved and the results obtained;
>(5) the time limitations imposed by the client or by the circumstances;
>(6) the nature and length of the professional relationship with the client;
>(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>(8) whether the fee is fixed or contingent.

Rule 1.5(d) provides that a fee may be contingent if it is in writing and the method by which the fee is to be determined is stated.

4

witnesses for the apportionment hearing and representing his clients at this hearing.

In another case apportioning wrongful death proceeds under K.S.A. § 60-1905, the court concluded that the plaintiff's attorney was entitled to one-third of the gross settlement proceeds after finding that the attorney's one-third contingency fee with plaintiff was reasonable.[10]  The court also rejected the intervenors' argument that it was inappropriate to have the intervenors' share charged with a percentage of fees that would be payable to plaintiff's counsel.[11]  The court further concluded that "in [its] experience . . . a one-third contingency fee is not uncommon in wrongful death actions."[12]

The Court concludes in this case that the one-third contingency fee charged by plaintiffs' counsel is reasonable.  Therefore, the Court should first deduct the plaintiffs' attorney's fees from the total $100,000 settlement amount.  Accordingly, Mr. Taff is entitled to one-third of the $100,000 settlement, which amounts to $33,333.33.

### Costs

The apportionment statute also allows reimbursement to plaintiffs' counsel for reasonable expenses incurred during the course of this litigation.[13]  Further, a pro rata share of the costs should be assessed against any award made to the intervenor.[14]  In this case, Mr. Taff asks for $942.44 in costs (Doc. 44 at 12).  Mr. Taff has submitted an itemized list of expenses, and the

---

[10]*Turman, et al. v. Ameritruck Refrigerated Trans. Inc.*, 125 F. Supp. 2d 444, 447-48 (D. Kan. 2000).

[11]*Id.* at 447; *see also Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1109 (D. Kan. 2004)

[12]*Turman*, 125 F. Supp. 2d at 448; *see also Newton*, 385 F. Supp. 2d at 1108 (D. Kan. 2004) (noting that the 25% contingency fee charged by plaintiff's counsel was a lower fee rate than what is often charged in personal injury cases).

[13]*Newton*, 385 F. Supp. 2d 1109.

[14]*Id.*

Court determines that these expenses are reasonable and were incurred during this litigation. Therefore, the Court will deduct the costs of $942.44 from the remaining settlement amount of $66,666.67, leaving a total of $65,724.23 to be apportioned among the six heirs.

### *Allocation and Apportionment*

Distribution under K.S.A. § 60-1905 is "'in proportion to the loss sustained by each of the heirs' rather than under the former intestacy formula."[15]  In this case, the parties concede that there is no evidence of pecuniary damages sustained by any of the six claimants.  Therefore, the Court must apportion the damages based on each party's non-pecuniary loss.  Non-pecuniary damages are "'intangible in nature such as mental anguish, bereavement, loss of society, and loss of companionship.'"[16]  "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved."[17]

At the apportionment hearing, the Court heard testimony from Angela McNair, Ralph Dudley, Jr., Randall Dudley, and Barbara Dudley regarding their non-pecuniary losses.  Dustin Dudley and Dorothy Dudley were unable to attend the hearing.  After reviewing all of the evidence, the Court has determined the appropriate apportionment between the six claimants based on the loss suffered by each claimant.  The Court addresses each claimant in turn below.

### **Barbara Dudley**

---

[15]*Frost v. Hardin*, 571 P.2d 11, 15 (Kan. App. 1977) (quoting K.S.A. § 60-1905).

[16]*Turman*, 125 F. Supp. 2d at 451 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)).

[17]*Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

Barbara Dudley and decedent were high school sweethearts.  Barbara testified that she met decedent when they were in sixth grade, and they began dating in high school.  After high school the couple lost contact, but they met again at their twenty-fifth high school reunion in Atchison, Kansas.  At that time, Barbara was living in Granbury, Texas.  In March 1993, Barbara moved to Atchison to be with decedent.  The couple were married at the courthouse in Atchison.  Barbara stated that her daughter from a previous marriage, Samantha, lived with the couple.  A few months later, Dustin and Randall, two of decedent's sons, moved from Denver, Colorado to live with Barbara and decedent.

Barbara testified that decedent had a problem with alcohol when they first married, and later he was convicted of selling drugs.  Decedent served two years in prison.  Barbara testified that she visited him often in prison.  When decedent was released, he continued to drink alcohol and did not have a job.  Barbara filed for divorce, and a divorce decree was granted in August 1997.  Afterwards, decedent entered a rehabilitation program for his alcohol abuse.  Upon his completion of the program, Barbara found that decedent had made significant changes in his life in that he was now able to be a good father and husband.  Barbara and decedent then reconciled and started living together again.  At that time, the couple lived with Barbara's two children, Samantha and Joel, and decedent's son, Randall.  When asked why they were never remarried following their 1997 divorce, Barbara replied that the couple felt like the divorce had never happened.

Decedent then began working at an asphalt company, while Barbara was working for a law firm and then later a casino.  Barbara quit her job with the casino in order to spend more time with her grandchildren.  At that time, Barbara testified that she and decedent began

contemplating their retirement in Texas.  Barbara still owned her house in Granbury, and she wanted to return to a job at a nuclear power company, which was her employment before her move to Kansas in 1993.  Barbara moved to Texas in April 2002.  She testified that she moved at that time because her home became vacant when the previous renters moved out.  She also stated that decedent did not move with her to Texas because he held a union job with an asphalt company and would become vested with retirement benefits in May 2005.  Therefore, the couple made the joint decision that decedent would continue working in Kansas while Barbara sought employment in Texas.  At that time, Samantha was finishing college, and she continued to reside with decedent and his son, Randall in Atchison.  Barbara testified that she and decedent would spend their time off from work visiting each other in either Kansas or Texas while they were living apart for their jobs.

When Samantha graduated in May 2003, Barbara returned to Atchison.  At that time, decedent's daughter, Angela McNair, was living in the family home in Atchison.  While Angela testified that Barbara cleared out all of the furniture and appliances from the house, Barbara testified that she only took a few items of furniture to the Texas home.  Barbara said that she returned to the house in December 2003 to move additional belongings to Texas including decedent's pool table.  Randall, decedent's son, corroborated this testimony by stating that he remembered loading his father's pool table into a truck for Barbara to move to Texas.  Both Barbara and Randall testified that decedent spent the winter months in Texas with Barbara because his work with the asphalt company was seasonal.  Randall also stated that Barbara would spend the summer months in Kansas when decedent had to work.  Randall further testified about a trip he took with his father to Texas to visit Barbara and Samantha sometime in 2004,

before decedent's death in October of that year.  Randall agreed that Barbara and decedent had a strong relationship and that his father loved Barbara.

Among the exhibits admitted at the hearing, were the telephone records of Barbara Dudley from the years 2002 to 2005.  The Court has reviewed these records, and finds that Barbara and decedent talked frequently by telephone while Barbara was in Texas, sometimes multiple calls a day.  Therefore, it is apparent that Barbara and decedent were still in a relationship at the time of his death in October 2004.

It is also apparent that Barbara has suffered a great loss by the death of her common law husband.  Barbara testified to the plans the couple had made for their retirement.  Together, they were moving their belongings and fixing up the house in Texas, waiting for decedent's retirement benefits to vest.  When discussing decedent's death, Barbara grew very emotional.  Her grief and suffering is obvious.  Barbara made the funeral arrangements in Atchison, purchasing two burial plots and a dual headstone so that she may be laid to rest next to decedent.  She spent over $13,000 on the funeral arrangements without contribution from another source.  When asked what she has lost by decedent's tragic death, she stated that she has lost her future and her dreams.  Because the Court finds that Barbara has suffered significant loss from the death of her common law husband, the Court deems it proper to award Barbara thirty-five percent (35%) of the wrongful death settlement.

### Dorothy Dudley

Dorothy Dudley is decedent's oldest child.  Ralph Allison Dudley, Jr., testified that his mother, Linda Sue Downing, was married to decedent and their two children, Dorothy and Ralph, were born in Atchison, Kansas.  When Ralph was about six, his parents separated, and he

moved with his mother to Denver, Colorado.  His parents later divorced.  Ralph testified that

Dorothy now lives in Dallas, Texas where she is homeless and has a substance abuse problem.

Angela McNair testified that Dorothy is "strung out on drugs."  Ralph attempted to bring

Dorothy to the hearing, but she failed to meet Ralph so that he could drive her to Kansas for the

proceeding.

Ralph testified that Dorothy probably saw her father about five to ten times in the past

five years.  He stated that Dorothy would drive from Texas with either Ralph or her boyfriend to

visit her father in Atchison.  Randall remembered seeing Dorothy "a few times" in Atchison and

that she was using drugs when he saw her.  When asked about decedent's relationship with

Dorothy, Barbara testified that Dorothy had asked decedent for help when she was doing drugs.

Barbara said that in the ten years that she knew decedent before his death, she never saw

Dorothy.  Because the evidence shows that Dorothy had little contact with her father, the Court

concludes that the loss she suffered is not as great as the loss experienced by other family

members who relied on decedent for companionship, advice, and care.  Therefore, the Court

concludes that two percent (2%) of the wrongful death proceeds should be awarded to Dorothy.

### Ralph Allison Dudley, Jr.

Ralph Allison Dudley is the first-born son of decedent.  As previously stated, Ralph's

mother, Linda Sue Downing, and decedent divorced when Ralph was a child.  Ralph lived with

his mother in Colorado, but he testified that he would visit his father on weekends and holidays.

In 1981, Ralph went to live in Atchison with his maternal grandfather.  At that time, decedent

had moved to Denver, but Ralph testified that he still saw his father when they would visit in

Colorado.  When Ralph was in college, his father had moved to Topeka, Kansas.  Ralph testified

that he and his girlfriend lived with his father one summer in Topeka while his girlfriend took classes at a nearby college.  During his college years, Ralph said that he saw his father occasionally, but that he did not visit his father during his time in prison.  Barbara testified that Ralph seldom came to visit his father, even when Ralph was in Atchison visiting his maternal relatives.  Ralph said that he last saw his father in September 2004, about one month before his death, when Ralph was visiting his family in Atchison.

Ralph testified that his father taught him how to be a man and how to treat others with respect.  He stated that his father was always just a phone call away, and that he could always count on him for help.  Ralph testified that he misses his father and he wishes he still had the ability to turn to him in any situation.  The Court is convinced that Ralph and decedent had a close relationship.  Ralph has suffered a loss by the death of his father, and the Court finds it appropriate to apportion twenty-five percent (25%) of the wrongful death proceeds to Ralph.

### Dustin Ralph Dudley

Dustin Dudley is the first of two sons born during decedent's marriage to Daphne Whitely.  Ralph testified that decedent met Daphne when he was living in Denver, and that the couple married in Colorado.  Randall Dudley testified that he does not know if Daphne and decedent were married.  In 1993, Dustin and Randall moved to Atchison and lived with their father and Barbara.  Dustin and Randall continued living with Barbara after decedent was incarcerated for selling drugs.  In 1995, while decedent was still in prison, Dustin returned to Denver.  Afterwards, Barbara said that Dustin would live back and forth between Denver and Atchison.  Barbara testified that she last saw Dustin in February 2001 when he was visiting in Atchison.  Dustin was captured on the video camera of a pawn shop trying to sell items stolen

11

from his father's and Barbara's home.  Barbara said that this was the last time that decedent ever saw Dustin before decedent's death in 2004.

Dustin was unable to attend the hearing because his probation officer would not allow him to leave the state of Colorado.  However, Randall's and Barbara's testimony demonstrate that Dustin and decedent did not have a close relationship.  Randall testified that he was closer to his father than Dustin in the years preceding his father's death.  And Barbara stated that decedent had not seen Dustin since February 2001, when Dustin took items from their home and attempted to sell them at a pawn shop.  Because Dustin had not seen his father in over three years, the Court determines that the loss he suffered was less than the loss suffered by his other siblings.  Accordingly, the Court finds that Dustin should be awarded two percent (2%) of the wrongful death proceeds.

### Randall Dudley

Randall Dudley is decedent's youngest son.  In 1993, he moved with Dustin from Denver to live with his father in Atchison.  Since that time, he has lived on and off with his father.  At the time of his death, decedent and Randall were living together in Atchison.  Randall testified that they had lived together since the spring of 2002 and the two men were like roommates.  Randall relied on his father for financial support and housing.  His father also provided Randall with advice and emotional support.

The Court is convinced that Randall has suffered a tremendous loss with the death of his father.  He saw his father every day.  Barbara testified that out of the five children, no one was closer to decedent than Randall.  Randall agreed that no sibling spent more time with their father than he did.  Therefore, the Court finds it appropriate that Randall recover twenty-five percent

(25%) of the wrongful death proceeds.

### Angela McNair

Angela McNair is the daughter of decedent and Donna Smith.  Her parents never married, and Angela first met her father when she was thirteen-years old.  Angela testified that before they met decedent did not know that he had a daughter, but that the two have had a relationship ever since.  Angela first went to live with decedent and Barbara in 1993.  Angela testified that she lived with the couple for about one year, but Barbara testified that Angela only lived with them for a few months.  According to Barbara, Angela moved into the home in August but her father asked her to leave around Thanksgiving because Angela missed curfews and was not following his rules.  Angela then moved back to Salina, Kansas.  Afterwards, Angela would see her father when he visited her in Salina.  They would also talk on the telephone.

Angela moved to live with her father in Atchison again in March 2003.  At that time, Barbara was living in Texas.  Decedent was living in the home in Atchison with Randall and Samantha, Barbara's daughter.  Angela lived with her father until September 2003, when she was arrested for selling drugs and sent to prison, where she remains.  Angela is to be released from prison in August 2007.

Angela stated that she had a close relationship with her father.  When she was shown a picture of her father and Randall, her face lit up in a smile.  Then, Angela displayed her grief through tears.  Ralph testified that he was closer to his father than Angela.  Ralph testified that his father and he discussed personal matters.  Angela testified that her father did not discuss his personal matters.  While Angela and her father only lived together for brief periods of time, it is

obvious that the two of them shared a relationship and that Angela has suffered loss due to her father's death.  Therefore, the Court finds it appropriate that Angela recover eleven percent (11%) of the wrongful death settlement proceeds.

**Conclusion**

In accordance with the findings above, the Court apportions the settlement proceeds as follows:

| | |
|---|---|
| Wrongful Death Proceeds | $100,000.00 |
| Attorney's Fees | - $ 33,333.33 |
| Costs | - $     942.44 |
| Total remaining for appointment | $ 65,724.23 |

| Heir | Proportion | Amount Recovered |
|---|:---:|---:|
| Barbara Dudley | 35% | $ 23,003.48 |
| Ralph Allison Dudley, Jr. | 25% | $ 16,431.06 |
| Dustin Ralph Dudley | 2% | $   1,314.48 |
| Angela McNair | 11% | $     7229.67 |
| Randall Dudley | 25% | $ 16,431.06 |
| Dorothy Dudley | 2% | $   1,314.48 |
| Total apportionment | 100% | $ 65,724.23 |

IT IS THEREFORE ORDERED BY THE COURT that the $100,000 settlement proceeds be apportioned in accordance with this Memorandum and Order.

IT IS SO ORDERED.

Dated this  3rd  day of February 2006.

 S/ Julie A. Robinson
 Julie A. Robinson

14

United States District Judge

Memorandum and Order, *Dudley, et al. v. Gagne et al.*, Case No. 05-2030-JAR